

**SO ORDERED.**

**SIGNED this 10 day of April, 2007.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 06-50092-JDW |
| LAWANDA YOUNG TUCKER, | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| GENERAL PRODUCE, INC., | ) | ADVERSARY PROCEEDING |
| | ) | NO. 06-5107 |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| LAWANDA YOUNG TUCKER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Plaintiff:        J. Wayne Moulton
                      925 Railroad Street
                      Conyers, Georgia 30012

For Defendant:        Danny L. Akin
                      Post Office Box 1773
                      Macon, Georgia 31202

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's motion for summary judgment[1] on its dischargeability complaint. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Undisputed Facts**

Plaintiff General Produce, Inc. is a corporation engaged in buying and selling wholesale quantities of perishable agricultural commodities in interstate commerce. At all times relevant to this adversary proceeding, Plaintiff was subject to and licensed under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq.

Stokes-Shaheen Produce, Inc. was a dealer and commission merchant subject to license under PACA. Debtor-Defendant Lawanda Tucker was the president of Stokes-Shaheen and owned more than 40% of its common stock. She was aware of its obligations under PACA. Her father-in-law, Preston Tucker, also owned shares in Stokes-Shaheen and served as its CEO. In addition, Mr. Tucker was primarily responsible for purchasing produce. Nevertheless, Debtor admitted she was involved in all aspects of the company's business, was authorized to draw on all the company's bank accounts, and managed the day-to-day operations with the assistance of Mr. Tucker. In fact, around March 2006, she removed Mr. Tucker from his purchasing duties and replaced him with another employee.

---

[1] Although Plaintiff styled its motion as one for partial summary judgment, it seeks a ruling on the sole count of its complaint.

3

Plaintiff sold Stokes-Shaheen $76,333.80 worth of produce.  Along with each shipment, Plaintiff included a timely invoice that notified Stokes-Shaheen of Plaintiff's trust rights under PACA and provided for the payment of interest at 1.5% per month and the cost of collection, including attorney fees.  Although the produce was not defective and Stokes-Shaheen accepted delivery of it, the company did not pay Plaintiff for the produce.  It did, however, sell the produce and use the proceeds to pay business debts.  All the produce sold was covered by PACA.

Debtor filed a Chapter 13 petition on January 26, 2006, which she converted to Chapter 7 on November 6, 2006.  In addition, Stokes-Shaheen filed a Chapter 7 petition on July 20, 2006.  Plaintiff filed this adversary proceeding against Debtor, alleging she is personally liable for the failure of Stokes-Shaheen to maintain sufficient assets to fund its PACA trust and, as a consequence, the debt to Plaintiff is nondischargeable due to defalcation.  Plaintiff filed a motion for summary judgment, which the Court will grant for the following reasons.

**Conclusions of Law**

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7056.  Under Rule 56, a party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); McCaleb v. A.O. Smith Corp., 200 F.3d 747, 750 (11th Cir. 2000).  The Court views all evidence and reasonable factual inferences in the light most favorable to the nonmoving party.  Burton v. Tampa Housing Auth., 271 F.3d 1274, 1277 (11th

Cir. 2001).

Plaintiff alleges its debt is nondischargeable due to Debtor's defalcation pursuant to 11 U.S.C. § 523(a)(4), which provides a Chapter 7 discharge "does not discharge an individual debtor from any debt ... (4) for fraud or defalcation while acting in a fiduciary capacity ...." Debtor counters that the trust created by PACA does not require the sort of fiduciary capacity contemplated by § 523(a)(4) and, in the alternative, that defalcation requires some wrongdoing on her part, which she contends is not present in this case. For Plaintiff to prevail on this summary judgment motion, it must establish (1) the existence of a fiduciary relationship with Debtor, and (2) conduct by Debtor rising to the level of defalcation.

Fiduciary Capacity

The Eleventh Circuit Court of Appeals has considered the definition of fiduciary capacity in the context of a § 523(a)(4) claim in Quaif v. Johnson, 4 F.3d 950 (11th Cir. 1993) and Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813 (11th Cir. 2006). In both cases, the plaintiff argued a nonbankruptcy statute created fiduciary capacity in the debtor. Likewise, in this adversary proceeding, Plaintiff contends the PACA statute creates fiduciary capacity.

Courts narrowly construe exceptions to discharge to protect the debtor's fresh start. Fernandez-Rocha, 451 F.3d at 816. Therefore, courts generally find fiduciary capacity only arises in conjunction with a technical trust, as opposed to a constructive or resulting trust. Quaif, 4 F.3d at 953. In addition, some courts have "articulated a requirement that the trust relationship have existed prior to the act which created the debt in order to fall within the statutory exception." Id. Statutory trusts are not per se technical trusts. The court must look to the trust

5

attributes and requirements imposed by the statute to determine whether it falls within the scope of § 523(a)(4).  Compare Quaif, 4 F.3d at 954 (the statute creates a technical trust) with Fernandez-Rocha, 451 F.3d at 818 (the statute does not create a technical trust).

In Quaif, the debtor was the sole shareholder of an insurance agency that sold an insurer's products to other agents.  The agency collected premiums on behalf of several insurers and deposited the money into a designated premium account, which was kept separate from the operating account.  The premium account was not segregated as to each insurer, but the agency documented the premiums collected for each insurer.  Ultimately, the agency transferred much of the premium money to its operating account to pay business expenses.  4 F.3d at 952.  A state court found the debtor liable for the missing funds and entered a judgment against him of $454,209.45.  Subsequently, the debtor filed a bankruptcy petition, and a representative of the insurer sought a determination that the judgment was nondischargeable under § 523(a)(4) due to the debtor's defalcation.  Id.

The insurer relied on a provision in the Georgia insurance code to establish fiduciary capacity.  The statute provided: "All funds representing premiums received ... by any agent ... shall be accounted for in his fiduciary capacity, shall not be commingled with his personal funds, and shall be promptly accounted for and paid to the insurer[.]"  Id. at 953 (quoting O.C.G.A. § 33-23-79).  The court found fiduciary capacity because the statute imposes fiduciary duties–accounting and segregation of the funds.  Id. at 954.  The commingling of premiums collected for different insurers did not change the result.

> [T]he court does not believe that a separation of premium funds *into distinct bank accounts* is an essential requirement of a trust. The Georgia statute requires that the premiums must be separate

>   from other types of funds, but may be kept in a common premium
>   account as long as there were adequate records of the sources of
>   these funds.  The court finds that this is sufficient "segregation" to
>   satisfy the requirement that the fiduciary duties be created prior to
>   the act of defalcation.

Id.  This case does not provide any express standard of fiduciary capacity.  Instead, the court essentially states that whatever the standard is, the Georgia insurance statute meets it.

In Fernandez-Rocha, the court of appeals reached the opposite result.  The debtor in Fernandez-Rocha was a doctor who was successfully sued by a patient for malpractice.  The trial court entered a judgment against him of more than $4 million.  451 F.3d at 814.  When the debtor filed a bankruptcy petition, the patient argued its judgment was nondischargable as a debt arising from defalcation pursuant to § 523(a)(4) because the debtor failed to maintain a fund to pay malpractice claims as required by Florida statute.  Id. at 817.

The statute at issue provided as a condition for obtaining and maintaining a medical licence, a doctor with hospital staff privileges must demonstrate the ability to pay medical malpractice claims to the extent of $250,000 per claim and $750,000 in the aggregate by (1) establishing an escrow account; (2) obtaining malpractice insurance; or (3) obtaining an irrevocable letter of credit.  Id. at 817-18 (citing Fla. St. § 458.320).

In concluding the statute did not create fiduciary capacity, the court first noted it does not create a relationship between the doctor and the patient; instead, it is a requirement for medical licensing.  Id. at 818.  Second, the statute does not require the malpractice funds to be held in trust or in a fiduciary capacity for the benefit of a third party, nor does it require any accounting of the funds for the benefit of a third party.  Id.  "Put simply, § 458.320 requires that a physician demonstrate financial responsibility to the appropriate state licensing authorities through certain

7

means, but it does not create in malpractice victims an entitlement to those means." Id.

Debtor has cited Cardile Brothers Mushroom Packaging, Inc. v. McCue (In re McCue), 324 B.R. 389 (Bankr. M.D. Fla. 2005), for the proposition that PACA does not create a technical trust within the scope of § 523(a)(4). The court in McCue stated an express trust requires, "a segregated trust res, an identifiable trust beneficiary, and trust duties established by contract or statute." Id. at 392. Because PACA does not require segregation of PACA proceeds or any tracking of the proceeds, the court found a PACA trust lacks the first element of a technical trust–a segregated res. Therefore, the debtor's PACA liability was not excepted from discharge. Id. at 392-93.

McCue makes no reference to the Eleventh Circuit's opinion in Quaif. Although the requirement to segregate and account for the trust assets was a factor in Quaif, nothing in the court's opinion indicated segregation was a *necessary* element of a technical trust. In fact, the majority of courts hold that an express trust requires an identifiable res, but not a segregated res. The court in N.P. Deoudes, Inc. v. Snyder (In re Snyder), 184 B.R. 473 (D. Md. 1995), made this point. The bankruptcy court held PACA did not create fiduciary capacity for purposes of deciding whether a debt is nondischargeable due to defalcation in part because PACA does not require segregation of trust assets. Id. at 474-75. The district court reversed. Like McCue, it outlined three requirements of a technical trust, including an identifiable trust res (as opposed to McCue's segregated res), specific fiduciary duties, and existence prior to and without reference to the act creating the debt. Id. at 475. The court clearly stated, "[S]egregation of funds is not a mandatory element of an express trust." Id.

A similar sentiment was expressed by the court in Eavenson v. Ramey, 243 B.R. 160

(N.D. Ga. 1999), which considered whether ERISA creates fiduciary capacity for purposes of defalcation under § 523(a)(4). Two elements are necessary to prove fiduciary capacity: (1) fiduciary relationship predating the debt; and (2) clearly expressed fiduciary duties. Id. at 165. A third element, identifiable res, also may be a factor, but the court in Quaif "did not definitely articulate whether it is an essential element." Id. Regardless of the need for an identifiable res, the court relied on Quaif to find that the res need not be segregated. Id. at 166. "[I]t is sufficient that the [ERISA] employee benefit plan was separately and clearly identified in the statute as the res, and appellant was entrusted with managing that res for the benefit of the participating employees." Id. See also, Collins Bros. Corp. v. Nix (In re Nix), No. 91-40817, Adv. No. 91-4040, 1992 WL 119143, at * 4 (M.D. Ga. Apr. 10, 1992) (finding PACA creates the necessary fiduciary capacity for defalcation); Collins Bros. Corp. v. Perrine (In re Perrine), No. 05-10816, Adv. No. 05-1118, 2006 Bankr. LEXIS 2516, at *19-20 (Bankr. N.D. Ga. Aug. 8, 2006) (same); Nuchief Sales, Inc. v. Harper (In re Harper), 150 B.R. 416, 418-19 (Bankr. E.D. Tenn. 1993) (same).

      The Court agrees with the majority, finding it to be most consistent with the Eleventh Circuit's decision in Quaif. Although a segregation component may strengthen the argument for an express trust, segregation is not required so long as the trust res is identifiable. Consequently, for PACA to create an express trust, it must provide for an identifiable res, it must specify fiduciary duties, and it must arise prior to and without relation to the wrongdoing creating the debt.

      The provision at issue in this case provides in relevant part as follows:

> (c)(2) Perishable agricultural commodities received by a

> commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. ...

7 U.S.C. § 499e(c).

First, the res is specifically identified and identifiable as all perishable agricultural commodities and products and proceeds of such commodities. See 7 C.F.R. Pt. 46.46(b). Second, the statute imposes the duty to hold the trust assets for the benefit of unpaid suppliers until they have been paid in full. In addition, the Regulations require the trustee to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful ...." Id. Pt. 46.46(d)(1). Third, the trust arises upon the trustee's receipt of perishable agricultural commodities, which occurs when the trustee "gains ownership, control, or possession" of the goods. Id. Pt. 46.46(a)(1). Consequently, the trust arises prior to any wrongdoing (i.e., failure to pay) and regardless of whether any wrongdoing occurs. Because PACA meets all the requirements of a technical trust, it satisfies the fiduciary capacity prong of Plaintiff's dischargeability claim.

Defalcation

Having concluded the PACA trust provision creates fiduciary capacity, the Court now turns to the definition of defalcation. In Quaif, the Eleventh Circuit said, "'Defalcation' refers to

a failure to produce funds entrusted to a fiduciary." 4 F.3d at 955.  The court then cited Judge Learned Hand for the best analysis of defalcation as used in § 523(a)(4). "Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'" Id. (citing Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510, 512 (2d Cir. 1937)).  In fact, the court noted, some cases have said "even a purely innocent party can be deemed to have committed a defalcation for purposes of § 523(a)(4)." Id.  The court in Quaif found defalcation when the debtor failed to remit trust funds because he had intentionally moved the funds to the company's general operating account. Id.  Such actions were "far more than an innocent mistake or even negligence." Id.

In Eavenson, the court applied the rule in Quaif to an ERISA trustee. 243 B.R. at 167. The trustee was responsible for overseeing his company's medical benefits. He was aware the company was in serious financial trouble but failed to notify the employees of the situation. In addition, the trustee concealed from the employees his knowledge that their medical claims were not being paid, while at the same time allowing deductions from employee paychecks for medical claims to continue. Id.  The debtor's conduct rose to the level of defalcation because it "violated his fiduciary duties under ERISA and was carried out with knowledge and intent." Id.

A similar standard for defalcation was applied by the court in Harper, a case involving a PACA trust. The court said the wrongdoing required for defalcation "does not have to be intentional." 150 B.R. at 419.  Under PACA, the produce merchant had

> a fiduciary duty to hold the produce received from the plaintiffs and any accounts receivable or proceeds derived from their sale in trust for the plaintiffs.  Because neither the produce, the accounts

11

> receivable, nor the proceeds of produce are now available to satisfy
> the plaintiffs' unpaid claims, and because there has been a failure
> to properly account for the funds, [the produce merchant] is guilty
> of defalcation.

Id. In another PACA case, the bankruptcy court found the debtor was not liable for defalcation. Nevertheless, it concluded, "While the defalcation need not be intentional, the wrongful conduct on the part of the corporate officer must at least be *knowing*." Fresh Western Mktg. Inc. v. Pieper (In re Pieper), 119 B.R. 837, 840 (Bankr. M.D. Fla. 1990) (internal citations omitted). Similarly, in the Fifth Circuit, defalcation need not be intentional, but it "requires a finding of at least willful neglect or recklessness ...." Hermes v. Sun Pacific Mktg. Coop., Inc. (In re Hermes), No. Civ.A. SA05CV187XR, 2005 WL 1593441, at *3 (W.D. Tex. July 7, 2005).

The District Court for the Middle District of Georgia went one step further in Nix, which involved a PACA trust. First agreeing intent is not a necessary element of defalcation, it then stated, "Defalcation may involve conduct that is negligent, innocent and ignorant or simply the failure to account for money or property belonging to another. ... [N]o element of bad faith need be shown." 1992 WL 119143, at *4 (footnotes omitted); see also Perrine, 2006 Bankr. LEXIS 2516, at *22 (Failure of a debtor to protect PACA trust assets "constitutes a defalcation regardless of whether the debtor misappropriated the funds for his own use or otherwise personally benefitted from the funds.").

Debtor urges the Court to apply the standard for defalcation articulated in Rutanen v. Baylis (In re Baylis), 222 B.R. 1 (Bankr. D. Mass. 1998), *aff'd in part and rev'd in part by* 313 F.3d 9 (1st Cir. 2002). In that case, a state court had found the debtor in breach of his fiduciary duties as co-trustee of a family trust because he had "breached his duty to use reasonable care to

12

prevent [his co-trustee] from failing to fulfill her fiduciary obligations." Id. at 3. The bankruptcy court found his actions did not constitute defalcation, noting most cases dealing with defalcation require some culpability of the debtor–at a minimum, willful neglect of duty. Id. at 4. It also observed the policy of strictly construing exceptions to discharge to protect the debtor's fresh start. Id. at 5. Based upon those two factors, the court excluded negligence as a basis for defalcation. Id. "Negligence is the result of basic human frailty. It is not conduct of such opprobrium that Congress is likely to have intended the resulting indebtedness to be excluded from a debtor's discharge." Id.

The Court agrees a showing of mere negligence is insufficient to satisfy the defalcation standard. Debtor has argued defalcation requires an act of moral turpitude. However, neither Baylis–the case cited by Debtor–nor the Eleventh Circuit's opinion in Quaif support that argument. Consequently, the Court concludes bad faith is not a necessary element of defalcation. Instead, a debtor who knowingly and intentionally violated her fiduciary duties under PACA may be liable for defalcation. In this case, Debtor was obligated to preserve the produce and its proceeds until Plaintiff had been paid in full. Rather than doing so, she knowingly allowed the trust assets to be used to pay other business expenses. Even if she intended to or hoped to find funds from other sources to pay Plaintiff, her good faith does not rectify the intentional breach of her fiduciary duties, which amounts to defalcation.

Liability of Debtor

The law is well-settled that a corporate officer or controlling person can, in certain circumstances, be held liable for the corporation's PACA violations. See Weis-Buy Servs., Inc.

v. Paglia, 411 F.3d 415, 421 (3d Cir. 2005) (collecting cases). "[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures ..." Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993). Therefore, Debtor may be liable if she knowingly used PACA trust assets for any purpose other than paying produce suppliers.

In this case, Debtor was a primary shareholder in Stokes-Shaheen and its president. She admitted to being involved in every aspect of the company's operations. She was authorized to draw on all the company's bank accounts. She was aware of the company's PACA trust obligations. Debtor does not deny Stokes-Shaheen was unable to pay PACA liabilities in 2005 and early 2006, but during that time it ordered produce from Plaintiff. The fact that other people, such as Mr. Tucker, may also have been controlling persons for purposes of PACA does not diminish Debtor's responsibility to carry out her fiduciary duties. She was aware proceeds of produce covered by PACA were being used to pay ordinary business expenses, even though the produce suppliers had not been paid in full. For the foregoing reasons, the Court finds Debtor's failure to protect trust assets from dissipation amounts to defalcation while acting in a fiduciary capacity for purposes of § 523(a)(4).

## Conclusion

Nondischargeability of a debt under § 523(a)(4) requires a showing of Debtor's fiduciary capacity and defalcation with respect to that debt. In this case, fiduciary capacity is created by

the PACA trust provision, which requires the purchaser of produce to hold the produce and its proceeds in trust for the suppliers until they are paid in full.  Debtor's defalcation occurred when she allowed trust assets to be depleted prior to satisfying the debt to Plaintiff.  Consequently, the Court concludes Plaintiff is entitled to judgment as a matter of law on the basis that its claim is nondischargeable pursuant to § 523(a)(4).

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT